

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2022
NOVEMBER 28, 2023 SESSION**

FILED

NOV 2 9 2023

**UNITED STATES OF AMERICA**

**v.**

**MARK HOLDREN
COREY SNYDER
JOHNATHAN WALTERS
CHAD LESTER
JACOB BOOTHE
ASHLEY TONEY**

CRIMINAL NO. 5:23-cr-00188

18 U.S.C. § 241
18 U.S.C. § 242
18 U.S.C. § 1512(K)
18 U.S.C. § 1512(B)(3)
18 U.S.C. § 1519
18 U.S.C. § 1001
18 U.S.C. § 2

**I N D I C T M E N T**

The Grand Jury Charges:

**Introduction**

1.     At all times relevant to this Indictment, the Southern Regional Jail (SRJ) was a state correctional facility operated by the West Virginia Division of Corrections and Rehabilitation (WVDOCR) and located in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia.  SRJ is a facility responsible for the custody, control, care, and safety of inmates, including pretrial detainees who are being held in custody following an arrest, but who have not been convicted of a crime.

2.     SRJ included, among other facilities, housing units for pretrial detainees and other inmates, a medical unit, and interview rooms. A-pod and C-pod were two housing units for pretrial

detainees and inmates at SRJ.

3.      Defendants MARK HOLDREN (HOLDREN), COREY SNYDER (SNYDER), JOHNATHAN WALTERS (WALTERS), CHAD LESTER (LESTER), JACOB BOOTHE (BOOTHE), and ASHLEY TONEY (TONEY) were employed by WVDOCR as correctional officers at SRJ. On or about March 1, 2022, defendant LESTER was on duty and acting in his official capacity as an SRJ Lieutenant; defendants HOLDREN, SNYDER, WALTERS, and BOOTHE were on duty and acting in their official capacity as SRJ Corporals; and defendant TONEY was on duty and acting in her official capacity as an SRJ Correctional Officer II.

4.      On or about March 1, 2022, Q.B., an individual known to the Grand Jury, was a 37-year-old pretrial detainee in the custody of SRJ and housed in C-pod.

5.      On or about March 1, 2022, defendants HOLDREN, SNYDER, BOOTHE, and TONEY, and other persons known and unknown to the Grand Jury, responded to a call for officer assistance after Q.B. tried to push past a correctional officer going from C-pod into a jail hallway.

## COUNT ONE

6.      Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

7.      On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendants MARK HOLDREN, COREY SNYDER, JOHNATHAN WALTERS, and other persons, both known and unknown to the Grand Jury, while acting under color of law, knowingly conspired to injure, oppress, threaten, and intimidate Q.B., a pretrial detainee, in the free exercise and enjoyment of a right secured and protected by the Constitution and the laws of the United States, namely, the right not to be deprived of due process of law, which includes the right to be free from the use of unreasonable force by correctional officers.  This offense resulted in bodily injury to Q.B. and resulted in Q.B.'s death.

2

<u>Purpose of the Conspiracy</u>

9.      The plan and purpose of the conspiracy was for defendants HOLDREN, SNYDER, and WALTERS, aided and abetted by each other and others known and unknown to the grand jury, to use unreasonable force against pretrial detainee Q.B. in retaliation for an earlier incident, during which Q.B. tried to push past a correctional officer and leave C-pod.  To do so, defendants HOLDREN, SNYDER, WALTERS, and others known and unknown to the Grand Jury, brought Q.B. to "blind spots" in the jail that were not monitored by the jail's video surveillance system, where the defendants, aided and abetted by each other, used unreasonable force against Q.B. by assaulting him.

<u>Overt Acts</u>

10.     In furtherance of the conspiracy, and to accomplish its objective, defendants HOLDREN, SNYDER, WALTERS, and others known and unknown to the Grand Jury, committed the following overt acts, among others, on or about March 1, 2022, at SRJ:

a.      Defendants HOLDREN and SNYDER, and others known and unknown to the Grand Jury, took Q.B. out of C-pod.  As they took Q.B. out of C-pod, defendant SNYDER, and others known and unknown to the Grand Jury, used unreasonable force on Q.B. while he was restrained, handcuffed, and in the custody of multiple correctional officers.

b.      Defendants HOLDREN and SNYDER, and others known and unknown to the Grand Jury, forcibly walked Q.B. to an interview room, which was already occupied by an inmate. After the inmate was ordered to leave the interview room, defendants HOLDREN and SNYDER, and others known and unknown to the Grand Jury, brought Q.B. inside the room. Defendant WALTERS joined them shortly thereafter. Defendants HOLDREN, SNYDER, and WALTERS

3

knew that the interview room was not monitored by video surveillance cameras.

  c. Inside the interview room, defendants HOLDREN and SNYDER, and others known and unknown to the Grand Jury, repeatedly and unreasonably struck and otherwise assaulted and injured Q.B. without justification while he was restrained, handcuffed, and in the custody of multiple officers.

  d. Defendants HOLDREN and WALTERS, and others known and unknown to the Grand Jury, then brought Q.B. from the interview room to a cell in A-pod.

  e. As defendants HOLDREN and WALTERS forcibly walked Q.B. to a cell in A-pod, Q.B. collapsed to the floor; after Q.B. collapsed, defendants HOLDREN and WALTERS, and others known and unknown to the Grand Jury, grabbed and carried Q.B., facedown, by his arms and legs to A-pod. As they carried Q.B. to a cell in A-pod, defendants HOLDREN and WALTERS, and others known and unknown to the Grand Jury, used force against Q.B. without justification while he was restrained, handcuffed and in the custody of multiple officers.

  f. Once in A-pod, defendants HOLDREN and WALTERS, and others known and unknown to the Grand Jury, dropped Q.B. on the floor.  After defendant SNYDER arrived at A-pod, defendants HOLDREN, SNYDER, and WALTERS, and others known and unknown to the grand jury, then carried Q.B. inside a cell in A-pod.

  g. Inside the cell in A-pod, defendant WALTERS and others struck and otherwise assaulted and injured Q.B without justification while Q.B. was restrained, handcuffed, and in the custody of multiple correctional officers.

  In violation of Title 18, United States Code, Section 241.

## COUNT TWO

11.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

12.     On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendants MARK HOLDREN, COREY SNYDER, and JOHNATHAN WALTERS, while acting under color of law and while aiding and abetting each other and others known and unknown to the Grand Jury, willfully deprived Q.B., a pretrial detainee, in the free exercise and enjoyment of a right secured and protected by the Constitution and laws of the United States, namely, the right not to be deprived of due process of law, which includes the right to be free from the use of unreasonable force by correctional officers. Specifically, defendants HOLDREN, SNYDER, and WALTERS, repeatedly struck and otherwise assaulted Q.B. in retaliation for Q.B.'s earlier attempt to leave C-pod, including after Q.B. was restrained and handcuffed.  This offense resulted in bodily injury to Q.B. and resulted in Q.B.'s death.

In violation of Title 18, United States Code, Sections 242 and 2.

## COUNT THREE

13.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

14.      On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendants JACOB BOOTHE and ASHLEY TONEY, while acting under color of law, willfully deprived Q.B., a pretrial detainee, in the free exercise and enjoyment of a right secured and protected by the Constitution and the laws of the United States, namely, the right not to be deprived of due process of law, which includes the right to be free from the use of unreasonable force by correctional officers. Specifically, defendants BOOTHE and TONEY willfully failed to intervene to protect Q.B. from being physically assaulted, despite having had the opportunity to do so.  This offense resulted in bodily injury to Q.B. and resulted in Q.B.'s death.

    In violation of Title 18, United States Code, Section 242.

## COUNT FOUR

15.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

16.     On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, the defendants MARK HOLDREN, COREY SNYDER, JOHNATHAN WALTERS, CHAD LESTER, JACOB BOOTHE and ASHLEY TONEY and other persons known and unknown by the Grand Jury, did knowingly conspire to commit offenses against the United States in violation of 18 U.S.C. § 1512(b)(3), that is, to use intimidation, threats, and to corruptly persuade, with the intent to hinder, delay, and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense.

### Purpose of the Conspiracy

17.     It was the plan and purpose  of the conspiracy that defendants HOLDREN, SNYDER, WALTERS, LESTER, BOOTHE, and TONEY and others both known and unknown to the Grand Jury, would omit material information and provide false and misleading information to state investigators during the course of their investigation into the circumstances of Q.B.'s death in order to cover up the use of unreasonable force on Q.B. and shield the defendants, and others known and unknown to the Grand Jury, from liability for their criminal conduct.

### Overt Acts

18.     In furtherance of the conspiracy, and to accomplish its objective, defendants, HOLDREN, SNYDER, WALTERS, LESTER, BOOTHE, and TONEY and others both known and unknown to the Grand Jury, committed the following overt acts, among others, at SRJ:

a.     Defendants HOLDREN, SNYDER, and WALTERS, and others known and

7

unknown to the Grand Jury, brought Q.B. to one or more areas of SRJ that were not monitored by video surveillance cameras, including the interview room and the cell in A-pod, so that no video camera would capture officers' unreasonable use of force on Q.B.

b.      Defendants HOLDREN, SNYDER, and WALTERS, and others known and unknown to the grand jury, each struck and otherwise assaulted and injured Q.B., and defendants BOOTHE and TONEY, and others known and unknown to the grand jury, were present when another defendant struck and otherwise assaulted and injured Q.B. However, defendants BOOTHE, HOLDREN, SNYDER, TONEY, and WALTERS omitted the unreasonable use of force against Q.B. in their respective SRJ Incident Reports and they did not report the use of unreasonable force against Q.B. to state investigators who investigated Q.B.'s death.

c.      Defendant BOOTHE met with witnesses and instructed them to falsely claim that Q.B. was combative and resisting officers and to falsely tell state investigators that officers did not use unreasonable force against Q.B.

d.      Defendants LESTER, WALTERS, and TONEY met with witnesses and instructed them to falsely claim that Q.B. was combative and resisting officers and to falsely tell state investigators that officers did not use unreasonable force against Q.B.

f.      Defendants LESTER, WALTERS, and TONEY later met with witnesses and asked if they relayed the false statements to state investigators during their interviews as the defendants had instructed.

g.      Defendants SNYDER and HOLDREN threatened to assault a witness to the assault of Q.B. if he did not relay false information about the circumstances of Q.B.'s death in his SRJ Incident Report and to state investigators.

h.      Defendant LESTER retaliated against officers that he suspected of having provided truthful information to state investigators by threatening to assault them and by giving them difficult and undesirable work assignments in the jail.

In violation of Title 18, United States Code, Section 1512(k).

**COUNT FIVE**

19.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

20.     On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant CHAD LESTER knowingly intimidated, threatened, and corruptly persuaded another person, and attempted to do so, and engaged in misleading conduct towards another person with the intent to hinder, delay, and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense – specifically, the violations of 18 U.S.C. § 242 as charged in Counts Two and Three.  Specifically, defendant LESTER instructed officers to give false and misleading information about the circumstances surrounding the injuries that Q.B. suffered, including: (1) instructing one correctional officer to falsely tell investigators that Q.B. was resisting and exhibiting unusual behavior; (2) instructing another correctional officer to falsely tell investigators that Q.B. was combative and belligerent, displayed erratic behavior, made abnormal statements, and attempted to assault another correctional officer and a nurse; (3) adding false and misleading information to another correctional officer's SRJ Incident Report, including that Q.B. made threats and claimed to see "little green people," and then instructing that correctional officer to provide that information to investigators; and (4) threatening another correctional officer by stating that he would assault anyone that provided investigators truthful information about the circumstances of Q.B.'s injuries and death.

In violation of Title 18, United States Code, Section 1512(b)(3).

## COUNT SIX

21.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

22.     On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant MARK HOLDREN knowingly intimidated, threatened, and corruptly persuaded another person, and attempted to do so, and engaged in misleading conduct towards another person with the intent to hinder, delay, and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense – specifically, the violations of 18 U.S.C. § 242 as charged in Counts Two and Three.  Specifically, defendant HOLDREN instructed officers to give false and misleading information about the circumstances surrounding the injuries that Q.B. suffered, including: (1) instructing a correctional officer to falsely tell investigators that Q.B. died of a heart attack; (2) falsely telling investigators that Q.B. was combative and fighting officers inside the interview room; and (3) failing to tell investigators that he and other officers struck and otherwise assaulted Q.B. in the interview room.

In violation of Title 18, United States Code, Section 1512(b)(3).

**COUNT SEVEN**

23.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

24.     On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant COREY SNYDER knowingly intimidated, threatened, and corruptly persuaded another person, and attempted to do so, and engaged in misleading conduct towards another person with the intent to hinder, delay, and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense – specifically, the violations of 18 U.S.C. § 242 as charged in Counts Two and Three.  Specifically, defendant SNYDER instructed officers to give false and misleading information about the circumstances surrounding the injuries that Q.B. suffered, including: (1) instructing a correctional officer to falsely tell investigators that Q.B. died of a heart attack; (2) falsely telling investigators that Q.B. was running away from him while he was bringing Q.B. to the interview room and, as a result, bumped into the wall multiple times; and (3) failing to tell investigators that he and others struck and otherwise assaulted Q.B. in the interview room.

In violation of Title 18, United States Code, Section 1512(b)(3).

## COUNT EIGHT

25.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

26.     On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant JOHNATHAN WALTERS knowingly intimidated, threatened, and corruptly persuaded another person, and attempted to do so, and engaged in misleading conduct towards another person with the intent to hinder, delay, and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense – specifically, the violations of 18 U.S.C. § 242 as charged in Counts Two and Three.   Specifically, defendant WALTERS instructed officers to give false and misleading information about the circumstances surrounding the injuries that Q.B. suffered, including: (1) instructing a correctional officer to falsely tell investigators that he did not see anything other than Q.B. being combative; (2) instructing another correctional officer to falsely tell state investigators that he did not see anything, and telling him to continue to relay that false information during another interview with other state investigators; (3) falsely telling investigators that defendant HOLDREN used pressure point techniques, and no other force, on Q.B. inside the interview room; and (4) failing to tell investigators that he and others struck and otherwise assaulted Q.B. in the interview room.

In violation of Title 18, United States Code, Section 1512(b)(3).

13

## COUNT NINE

27.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

28.     On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant ASHLEY TONEY knowingly intimidated, threatened, and corruptly persuaded another person, and attempted to do so, and engaged in misleading conduct towards another person with the intent to hinder, delay, and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense – specifically, the violations of 18 U.S.C. § 242 as charged in Counts Two and Three.  Specifically, defendant TONEY instructed officers to give false and misleading information about the circumstances surrounding the injuries that Q.B. suffered, including: (1) instructing a correctional officer to falsely claim investigators that Q.B. was combative and resisting; (2) falsely telling investigators that Q.B. tried to stand up in the interview room; and (3) failing to tell investigators that officers struck and otherwise assaulted Q.B. in the interview room.

In violation of Title 18, United States Code, Section 1512(b)(3).

## COUNT TEN

29.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

30.     On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant JACOB BOOTHE knowingly intimidated, threatened, and corruptly persuaded another person, and attempted to do so, and engaged in misleading conduct toward another person with the intent to hinder, delay, and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense – specifically, the violations of 18 U.S.C. § 242 as charged in Counts Two and Three. Specifically, defendant BOOTHE instructed officers to give false and misleading information about the circumstances surrounding the injuries that Q.B. suffered, including: (1) instructing correctional officers to falsely tell investigators that they did not see officers use unreasonable force against Q.B.; (2) instructing correctional officers to falsely tell investigators that Q.B. was combative and resisting; (3) falsely telling investigators that Q.B. attempted to assault others in the interview room; and (4) failing to tell investigators that Q.B. was struck and otherwise assaulted in the interview room.

In violation of Title 18, United States Code, Section 1512(b)(3).

15

## **COUNT ELEVEN**

31.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

32.      On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant JOHNATHAN WALTERS, in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly made a false entry in an SRJ Incident Report document with the intent to impede, obstruct, and influence the investigation and proper administration of the matter within the jurisdiction of a federal agency – specifically, the violations of 18 U.S.C. § 242 as charged in Counts Two and Three.  Specifically, defendant WALTERS made the following false entries in the Incident Report: (1) falsely claiming that when WALTERS walked into the interview room he saw correctional officers using pressure point techniques on Q.B. and no other force against Q.B.; (2) falsely claiming that Q.B. cursed at officers and repeatedly refused to walk during the escort from the interview room to A-pod; and (3) falsely claiming that WALTERS poured water on Q.B.'s face in A-pod in order to decontaminate Q.B after officers used OC spray on him.

In violation of Title 18, United States Code, Section 1519.

16

## COUNT TWELVE

33.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

34.     On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant MARK HOLDREN, in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly falsified and made a false entry in an SRJ Incident Report with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of any department or agency of the United States – specifically, the violations of 18 U.S.C. § 242 as charged in Counts Two and Three.  Specifically, defendant HOLDREN made the following false entries in his SRJ Incident Report: (1) falsely claimed that correctional officers stopped using force against Q.B. once Q.B. was handcuffed in the C-pod area; and (2) falsely claimed that, inside the interview room, Q.B. attempted to grab a nurse's hand and did grab the hand of a correctional officer.

In violation of Title 18, United States Code, Section 1519.

## **COUNT THIRTEEN**

37.    Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

38.     On or about March 1, 2022, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant JACOB BOOTHE, in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly falsified and made a false entry in an SRJ Incident Report with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of any department or agency of the United States – specifically, the violations of 18 U.S.C. § 242 as charged in Counts Two and Three.  Specifically, defendant BOOTHE made the following false omissions and entries in his SRJ Incident Report: (1) omitting that officers used unreasonable force against Q.B. when they struck and otherwise assaulted Q.B. inside the interview room and other locations in the jail; (2) falsely claiming that Q.B. cursed at officers and refused to walk during the escort from the interview room to A-pod; and (3) falsely claiming that officers used a cup with water to decontaminate Q.B. from the effects of the OC spray that officers had used on him.

In violation of Title 18, United States Code, Section 1519.

18

## COUNT FOURTEEN

43.      Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

44.      On or about October 5, 2023, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant CHAD LESTER knowingly and willfully made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the United States – specifically, the violations of 18 U.S.C. § 242 as charged in Counts Two and Three.  Specifically, defendant LESTER during a voluntary interview with FBI agents,  (1) falsely claimed that Q.B. was brought to the interview room because inmates were not permitted in the medical unit pursuant to SRJ's COVID-19 pandemic protocol; (2) falsely claimed that, while officers were bringing Q.B. from the interview room to C-pod, he heard Q.B. screaming, "Fuck y'all, y'all are going to carry my ass, I'm going to make you work for it";  (3) falsely claimed that he did not instruct any officers to provide false and misleading information, in their SRJ Incident Reports about the circumstances of Q.B.'s injuries and death; and (4) falsely claimed that he did not instruct anyone to provide false and misleading information, or omit information, to investigators about the circumstances of Q.B.'s injuries and death.

In violation of Title 18, United States Code, Section 1001.

## COUNT FIFTEEN

45.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

46.     On or about October 5, 2023, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant MARK HOLDREN knowingly and willfully made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the United States – specifically, the violations of 18 U.S.C. § 242 as charged in Counts Two and Three.  Specifically, defendant HOLDREN during a voluntary interview with FBI agents,  (1) falsely claimed that he and other officers stopped using force against Q.B. after Q.B dropped a mop that Q.B. had in his hand in the C-pod area; (2) falsely claimed that he and other officers did not use unreasonable force against Q.B. after officers brought Q.B. out of C-pod; (3) that Q.B. was noncompliant and belligerent during the escort from C-pod and inside the interview room; and (4) that Q.B. refused to walk during the escort from the interview room to A-pod and told officers, "I'm not walking, I'll have your jobs."

In violation of Title 18, United States Code, Section 1001.

## COUNT SIXTEEN

47.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

48.     On or about October 5, 2023, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant COREY SNYDER knowingly and willfully made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the United States – specifically, the violations of 18 U.S.C. § 242 as charged in Counts Two and Three.  Specifically, defendant SNYDER during a voluntary interview with FBI agents, (1) falsely claimed that he stomped on Q.B. in the C-pod area out of necessity because Q.B. was "lifting up every single officer"; (2) falsely claimed that he and other officers did not use unreasonable force against Q.B. inside the interview room or other locations in the jail; and (3) falsely claimed that SNYDER got Q.B.'s blood on him when Q.B. spit blood out of his mouth at SNYDER; and (4) falsely claimed that Q.B. did not sustain any significant injuries.

In violation of Title 18, United States Code, Section 1001.

## COUNT SEVENTEEN

49.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

50.     On or about August 2, 2023, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant ASHLEY TONEY knowingly and willfully made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the United States - specifically, the violations of 18 U.S.C. 242 as charged in Counts Two and Three.  Specifically, defendant TONEY during a voluntary interview with FBI agents, (1) falsely claimed that she did not see any officers strike and otherwise assault Q.B. inside the interview room; (2) falsely claimed that she did not see Q.B. bleeding at any point; and (3) falsely claimed that she did not instruct anyone to provide false and misleading information, or omit information, to investigators about the circumstances of Q.B.'s injuries and death.

In violation of Title 18, United States Code, Section 1001.

## **COUNT EIGHTEEN**

51.     Paragraphs 1 through 5 are hereby realleged and incorporated by reference.

52.     On or about August 2, 2023, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant JACOB BOOTHE knowingly and willfully made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the United States — specifically, the violations of 18 U.S.C. 242 as charged in Counts Two and Three.   Specifically, defendant BOOTHE during a voluntary interview with FBI agents, (1) falsely claimed that he did not see any officers strike and otherwise assault Q.B. inside the interview room or other locations in the jail; and (2) falsely claimed that Q.B. intentionally refused to walk during the escort from the interview room to A-pod.

In violation of Title 18, United States Code, Section 1001.


WILLIAM S. THOMPSON
United States Attorney

By: _____
MONICA D. COLEMAN
Assistant United States Attorney

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

By: _____
CHRISTINE M. SISCARETTI
Deputy Chief of Operations

MATTHEW TANNENBAUM
Trial Attorney


23