## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

**UNITED STATES OF AMERICA**


**v.**                                          **Case number: 5:23-cr-00188-01**


**MARK HOLDREN**


### DEFENDANT'S SENTENCING MEMORANDUM
### AND MOTION FOR DOWNWARD VARIANCE

Defendant Mark Holdren, by counsel submits this sentencing memorandum and motion for downward variance for the court's consideration. Mr. Holdren agrees with the guidelines calculation in the presentence investigation report (hereinafter "PSR") finding a total offense level of 36 and zero criminal history points placing Mr. Holdren in the advisory guideline range of 188-235 months. Mr. Holdren asserts, however, that in light of the totality of sentencing factors, a downward variance to a sentence of between 10 to 12 years imprisonment will result in a fair and just sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth 18 U.S.C. § 3553 (a)(2).


### Defendant's Background and Nature of the Offense

Mark Holdren is a 41 year old father of two. His daughter Haley attends West Virginia University and his son Konnor, a high school student, lives with his mother in Raleigh County. Mark has lived his entire life in Raleigh County has a close relationship with his supportive family and strong ties to the local community. Mark has been employed virtually continuously since he

was in high school and has prioritized supporting his children emotionally and financially. Mark took the job at Southern Regional Jail (hereinafter "SRJ") in 2014 because good jobs are scarce in Southern West Virginia and this job permitted him to earn a decent living in a job with state benefits for him and his children that did not require him to travel and afforded him time for his children.  As the court is well aware, it is Mark's actions as a correctional officer at SRJ that bring him before this court for sentencing. The court has seen the evidence and heard the testimony, including Mark's, at the trial of Chad Lester, and the relevant facts are not in dispute. Mark and his fellow correctional officers used excessive and unreasonable force to punish a young man named Quantez Burks. Mark delivered blows to Mr. Burks and witnessed others striking Mr. Burks  knowing the actions were morally and legally wrong and bears responsibility for the death of a man and the suffering of his family.

Mark makes no excuses for his criminal conduct and is deeply ashamed that his unjustified actions contributed to the death of a man who did not deserve to be assaulted let alone killed. Mark knows that nothing he can do or say now will erase his wrongful conduct and the tragic consequence of his actions. It is not, though, just for the benefit of this court that Mark expresses his deep remorse and apologizes to  the  family of Quantez Burks for the pain and suffering they endure due  to the loss of their loved one.  He fully accepts responsibility and has endeavored to make what amends can be made but understands that  does not come close to negating the need for a lengthy prison sentence.

Mark intentionally inflicted unreasonable physical force against Mr. Burks but he did not intend to inflict grievous bodily harm let alone for Mr. Burks to die. The intent was to "rough up" Mr. Burks and "teach him a lesson." Such misconduct was, as the court has heard from Mark and

numerous others, not only  common at SRJ   but encouraged by the leadership and something for which correctional officers would receive praise and benefits in the nature of preferable job assignments and working hours. Mark was merely a cog in a machine controlled and operated by persons holding positions of great power and authority at SRJ and in the state government hierarchy above the jail. The machine was rotten from top to bottom but that is not intended as an excuse. Mark could have and should have either tried to prevent abuse or failing that leave the job and he did not. He accepts his share of the blame and is ready to accept his just punishment.

That Mark has used unreasonable force against inmates other than Quantez Burks is an admitted fact and one this court must consider in fashioning a sentence but it does not support even an inference that Mark intended to cause Mr. Burk's death.

Indeed, as the video from A-Pod shows, when it was belatedly realized that Mr. Burks was in acute distress, it was Mark who took the lead in administering CPR and attempting to save Mr. Burk's life. Obviously, his efforts failed but a person with the intent to kill does not attempt to save the life of the victim.

## **Defendant's  Objections**

The defendant's objections have largely been resolved. The objection to **Paragraph 38** of the draft PSR was addressed with a revision or clarification of the language. Mr. Holdren believes the revised language in the final PSR is now accurate on its face. Mr. Holdren repeats that he did not  personally instruct any other officer as to what say to investigators or direct any threats of harm at any other person. Mr. Holdren concedes that throughout his tenure at SRJ he and certain other officers would engage in what might be best termed as "cocky tough guy" talk which

3

suggested in general terms officers might face reprisal if they informed on other officers. Younger officers hearing the "in-crowd" talk tough may well have been intimidated  but Mark never directed a threat at anyone including the potential witnesses in this matter.

Mr. Holdren does maintain his objection to the revision of **Paragraph 117** and the language in the Final PSR. Mr. Holdren's conduct in this case including the use of unreasonable force which resulted in bodily injury and death does not suffice to remove this case from the "heartland" of cases to which U.S.S.G. § 2H1.1 applies. This is particularly true where in this matter § 2H1.1 provides a cross reference to the voluntary manslaughter guideline, § 2A1.3,  and a base offense level of 29. Furthermore, the specific offense characteristic for offense committed under color of law is applied and increased the offense level by 6 levels and the Chapter 3 vulnerable victim adjustment (§ 3A1.1(b)) is also applied. A departure is not warranted unless an aggravated factor exists which is not adequately taken into consideration by the applicable guidelines. In this matter, a total offense level of 36 fully accounts for the nature of Mr. Holdren's conduct which is not atypical among cases involving the deprivation of civil rights under color of law involving unreasonable and excessive force by law enforcement or correctional officers.

## Government's Objections

The United States has objected to **Paragraph 45**, in which the PSR correctly applies the cross reference in the primary guideline. U.S.S.G. § 2H1.1 is the primary guideline and § 2H1.1 (a)(1) provides that the offense level from the underlying offense shall apply if it is greater than offense level. The probation officer has correctly identified § 2A1.3 (voluntary manslaughter) as the underlying offense. The facts of this case most closely correspond with the elements of

voluntary manslaughter. United States Code Section 1112 codifies federal crime of manslaughter

The elements of voluntary manslaughter are:

First, the defendant unlawfully killed the victim;

Second, while in a sudden quarrel or heat of passion, caused by adequate provocation:

a) the defendant intentionally killed [name of victim]; **or**

b) the defendant killed the victim recklessly with extreme disregard for human life.

Here, although Mr. Holdren did not intend cause the death of Mr. Burks, he will not challenge the PSR's implicit finding that Mr. Burks was killed recklessly with extreme disregard for human life neither involuntary manslaughter nor aggravated assault fit the facts of the case despite the lack of the intent to kill.

The United States though argues that despite the lack of intent to kill, malice, or premeditation that the underlying offense should be identified as first degree murder, asserting the felony-murder rule applies to these facts. This assertion, as the probation officer correctly notes in the addendum to the PSR, ignores the language of 18 U.S.C. § 1111, the federal murder statute. While § 1111 does incorporate language establishing a species of felony-murder, the federal felony-murder rule applies only to deaths resulting from these enumerated offenses: "arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery." *Id*.

Therefore, the proper cross reference to an underlying offense is to voluntary manslaughter. The felony-murder rule does not apply; Mr. Holdren did not intend to kill Mr. Burks and one who lacks the intent to kill cannot premeditate the killing which eliminates first degree murder from consideration. Likewise, essential elements of second degree murder are

absent as well. Second degree murder does not require premeditation but it does require both the intent to kill and actual malice.

The government's other objections relate to the offense level calculations based upon its position the cross reference should be to felony-murder, not voluntary manslaughter. The court's ruling on that issue will resolve the issue of the total offense level as the parties each agree with the calculation in the PSR other than the appropriate base offense level. The PSR with which defendant concurs calculates the base offense level as 29, adds 6 levels pursuant to the specific offense characteristic found at U.S.S.G. § 2H1.1 (b)(1) because the offense was committed under color of law, adds 2 additional levels pursuant to the vulnerable victim adjustment found at § 3A1.1 (b)(1), and adds 2 more levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1 (Mr. Holdren agrees the obstruction enhancement applies based upon his false incident report and untrue statements to investigators during the investigatory stage of the case but again states that he did not instruct any other officer to provide false statements as alleged in **Paragraph 49.**) This results in an adjusted offense level, prior to acceptance of responsibility, of 39. With the grant of a 3 level decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 (a) and (b), the total offense level is 36, which combined with zero criminal history points and criminal history category I results in an advisory sentencing range of 188-235 months. The government's position would increase the base offense level and thus the total offense level by 14 levels; the sentencing table is capped at offense level 43, so its position is the advisory sentencing range is life but the parties' plea agreement caps the sentence at 360 months.

In summary, the defendant agrees with the calculations and the bases therefore set forth in the PSR and that the proper advisory sentencing range is 188-235 months. Mr. Holdren does

formally move for  a downward variance based on the totality of circumstances and the sentencing

factors found in 18 U.S.C. § 3553 (a).

## Motion for Downward Variance and Applicability of 18 U.S.C. § 3553 (a) Factors

Mark Holdren moves this court for a downward variance on the grounds that a sentence

of 188 months or more is greater than necessary to  comply with the purposes set forth in  18

U.S.C. § 3553 (a)(2).  Mr. Holdren incorporates the  arguments set forth above and intends for

those to address the nature and circumstances of the offense and his personal characteristics and

history (*see* 18 U.S.C. § 3553 (a)(1)) This motion will further address relevant factors set forth in

§ 18 U.S.C. § 3553 (a)(2)(A) requires the sentence "to reflect the seriousness of the

offense, to promote respect for the law, and to provide just punishment for the offense[.]"

Without debate this is a serious offense. A sentence of 10 to 12 years is a serious sentence,

commensurate with the nature of the offense viewed in light of all the circumstances. A prison

sentence of a decade will promote respect for the law and provide just punishment.

§ 18 U.S.C. § 3553 (a)(2)(B) requires the sentence to "afford adequate deterrence to

criminal conduct[.]" As this court has noted on the record during court proceedings and in the

memorandum opinion at ECF 283: "Behind prison walls, abuse often goes unchecked." This fact

is what can fail to deter correctional officers from abusing prisoners. A ten year sentence is great

deterrence, if one believes they are likely to receive such a long sentence. Officers are not deterred

because they do not think they will get caught not because they believe ten long years in a prison

cell is a small price to pay for misconduct. If every correctional officer in the nation believed they

would certainly receive a 10 year prison for using excessive force causing serious bodily injury or

death, there would be far less excessive force used. Ten years in prison  is more than sufficient to deter any rational person from committing a crime from which they receive no tangible  personal benefit.

§ 18 U.S.C. § 3553 (a)(2)( C ) requires the sentence to "protect the public from further crimes of the defendant[.]" Mr. Holdren is a 41 year old man with no prior criminal history. The general public has never needed protection from him and after serving a 10 year sentence, even with good time he will be approaching 50 years old. As a convicted felon, he will never be employed as as correctional officer or in any capacity in which he has custodial control over another person.

§ 18 U.S.C. § 3553 (a)(2)(D) requires the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" Ten years will provide much more than ample time to provide Mr. Holdren with any training, care or treatment he may need.

§ 18 U.S.C. § 3553 (a)(3) and (4) instruct the court to consider the kinds of sentence available. Mr. Holdren acknowledges that he should and will receive a sentence of imprisonment and the only remaining issue is the length of that sentence.

§ 18 U.S.C. § 3553 (a)(5) instructs the court to consider any relevant policy statements issued by the sentencing commission. Counsel is aware of no policy statements specifically applicable to this offense of defendant.

§ 18 U.S.C. § 3553 (a)(6) requires the court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" Thus far, among the defendants,  Ashley Toney has been sentenced to 78 months;

Chad Lester was sentenced to 210 months; and Steven Wimmer was sentenced to 108 months.

Of these three, the facts and circumstances of Mr. Wimmer's case bear the greatest similarity to those of Mr. Holdren. Mr. Wimmer, as shown in the video surveillance and through testimony, inflicted at least as much and probably more physical force upon Mr. Burks than any other officer involved in the offense including Mr. Holdren. The biggest difference between where Mr. Wimmer and Mr. Holdren are situated is that Mr. Wimmer chose to enter a plea agreement and begin cooperating prior to the indictment being handed down in September of 2023 in this matter whereas Mr. Holdren did not plead prior to indictment and did not begin cooperating until late July of 2024. It is axiomatic that prompt and thorough cooperation generally results in more favorable treatment but given the thoroughness of Mr. Holdren's cooperation including voluntary debriefings with the government on numerous occasions and his important testimony at the Lester trial, a sentence slightly greater than that Mr. Wimmer received is appropriate.

Furthermore, by way of explanation not excuse, unlike Mr. Wimmer, Mr. Holdren did not have adequate legal representation in the pre-indictment stage. Mr. Holdren randomly hired a private lawyer from Georgia based on reading the lawyer's website and the lawyer essentially took Mr. Holdren's money did no work and offered damaging advice which caused Mr. Holdren to make an already bad situation worse. Mr. Holdren is, of course, responsible for his decisions and receiving a sentence greater than that Mr. Wimmer received is expected but, the sentence should not be drastically greater than the 108 months received by Mr. Wimmer.

Additionally, § 18 U.S.C. § 3553 (a)(6) instruct courts to consider unwarranted sentencing disparities with defendants in different cases as well so long as they have similar records and engaged in similar conduct. At the time the PSR was prepared and the probation

officer searched the United States Sentencing Commission's JSIN database

(www.ussc.gov/guidelines/judiciary-sentencing-information), there were an insufficient number of

defendants whose primary guideline was § 2H1.1, with a total offense level of 36 and a criminal

history category of 1, As of July 1, 2025, though the database has been updated. The database

currently shows:

> FEDERAL DEFENDANTS IN SELECTED CELL
> During the last five fiscal years (FY2020-2024), there were 3 defendants whose
> primary guideline was §2H1.1, with a Final Offense Level of 36 and a Criminal
> History Category of I, after excluding defendants who received a §5K1.1
> substantial assistance departure. For the 3 defendants (100%) who received a
> sentence of imprisonment in whole or in part, the average length of imprisonment
> imposed was 145 month(s) and the median length of imprisonment imposed was
> 140 month(s).

The database also shows that even were the court to sustain the government's objection to

the base offense level and find the cross reference to first degree murder is appropriate,

defendant's with similar criminal records who engaged in similar conduct received sentence far

below the 360 months maximum set forth in the plea agreement:

> FEDERAL DEFENDANTS IN SELECTED CELL
> During the last five fiscal years (FY2020-2024), there were 18 defendants whose
> primary guideline was **§2H1.1, with a Final Offense Level of 43 and a Criminal
> History Category of I**, after excluding defendants who received a §5K1.1
> substantial assistance departure. For the 18 defendants (100%) who received a
> sentence of imprisonment in whole or in part, the average length of imprisonment
> imposed was 210 month(s) and the median length of imprisonment imposed was
> 207 month(s).

(www.ussc.gov/guidelines/judiciary-sentencing-information;  Accessed 7/1/2025)

Finally, the parties will speak to Mr. Holdren's cooperation and its thoroughness,
truthfulness and importance at sentencing but once Mr. Holdren was properly represented and he
subsequently made the decision to plead, accept responsibility and cooperate in the investigation,
he literally did everything within his power to assist the investigation[s]. Mr. Holdren must live

the remainder of his life knowing he  committed a serious offense and contributed to a man's death. He then admittedly compounded his error during the investigatory stage by making untrue statements and he knows he must pay the price for that conduct. Nothing he can or will do will bring back Mr. Burks or lessen the pain he has caused Mr. Burks's loved ones to suffer. For that he is profoundly sorry.

<u>**Conclusion**</u>

Mark Holdren respectfully requests that the court deny the government's objection to the

offense level, adopt the recommendations set forth in the PSR and find that an advisory

sentencing range of 188 to 235 months applies. Mr. Holdren further humble requests that this

court grant a downward variance and sentence him to a sentence between ten and twelve years.

> Respectfully Submitted,
> MARK HOLDREN,
> By counsel,
>
> **s/ David Schles**
> David Schles (WV Bar #6375)
> 815 Quarrier Street
> Suite 306
> Charleston, WV 25301
> (304) 344-1559
> Schleslaw@gmail.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

**UNITED STATES OF AMERICA**

**v.**                                                   **Case number: 5:23-cr-00188-01**

**MARK HOLDREN**

## CERTIFICATE OF SERVICE

I, David Schles, counsel for defendant, Mark Holdren,  do hereby certify that on this 2nd day of July, 2025, the foregoing  DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE was served  upon all parties by  CM/EMF electronic filing.

s/ David Schles
David Schles, WV Bar #6375
815 Quarrier Street
Suite 306
Charleston, WV 25301
(304) 344-1559
Schleslaw@gmail.com

12