**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON**

**UNITED STATES OF AMERICA**

**v.**                                                    **CRIMINAL NO. 5:23-cr-00188**

**COREY SNYDER**

## <u>SENTENCING MEMORANDUM OF THE UNITED STATES</u>

On March 1, 2022, pretrial detainee Quantez Burks died on a cell floor at the Southern Regional Jail ("SRJ" or "the jail") after defendant Corey Snyder and other correctional officers conspired to bring him to "blind spots" – areas not captured on surveillance cameras – and beat him as punishment for his earlier attempt to leave his assigned pod. Soon after Burks took his last breath, defendant Snyder, his co-defendants, and other officers engaged in an extensive cover-up of the circumstances of Burks's death by writing false reports, giving a false cover story to investigators, and threatening other officers with violence and retaliation if they gave truthful information to investigators. More than a year after Burks's death, defendant Snyder stuck to the false cover story, relaying it to FBI agents during a voluntary interview.

The defendant's actions led to the death of a 37-year-old man and attempted to shield himself and fellow law enforcement officers from being held accountable for his death. Through his conduct, the defendant violated the public's trust in the law enforcement system he had sworn to uphold. The sentence in this case should reflect the seriousness of his actions and send a strong message to the defendant, the Burks family, and the community: it does not matter who you are or what position you may hold. No one is above the law.

### 1.  Government Objection to the Application of USSG § 2A1.3

The government has objected to the guideline calculation in the PSR. Specifically, the government submits that Probation incorrectly relied upon U.S.S.G. §2A1.1(3), which is the

guideline for voluntary manslaughter, in determining the cross-reference pursuant to §2H1.1(a)(1), which establishes the Base Level as the Offense Level from the guideline that is applicable to the underlying offense. The federal voluntary-manslaughter statute defines that crime as "the unlawful killing of a human being without malice ... [u]pon a sudden quarrel or heat of passion." 18 U.S.C. § 1112(a). However, the assault that led to Burks's death was not committed during the course of a sudden quarrel or in the heat of passion. Instead, it was a premeditated act resulting in Burks's death. Accordingly, the United States submits that the appropriate cross-reference is instead §2A1.1(2)(B), which is the provision for First Degree Murder.[1]

The Fourth Circuit has held that premeditation is established where the evidence shows that there was some appreciable time for reflection and consideration before execution of the act, and that such a period of time does not require the lapse of days, hours, or even minutes. *United States v. Sinclair*, 301 Fed.Appx. 251, 255 (4th Cir. 2008) (upholding the application of §2A1.1 based on the finding that premeditation existed where the defendant left a nightclub after an altercation, retrieved a gun, and returned several minutes later to shoot the victim). "While the amount of time for reflection may vary, it is the fact of deliberation, of second thought that is important." *Id.* Here, defendant Snyder and his co-defendants had time to reflect, consider their response, and choose their course of action before they brought Burks to the interview room.

Based upon the evidence established in the stipulation of fact accompanying defendant Snyder's plea agreement as well as during the trial of co-defendant Cad Lester, the officers' initial encounter with Burks after he attempted to push past an officer and leave C-pod on the morning

---

[1] The government initially objected to Probation's reliance on the voluntary manslaughter provision and argued that the First Degree Murder guideline should apply because the death resulted during the course of the commission of another felony (violations of 18 U.S.C. §§241, 242). As Probation noted in its response, neither of these felonies are listed in 18 U.S.C. §1111. However, the government submits that the First Degree Murder provision should still apply, based upon the premeditation involved in the fatal assault of Burks.

of March 1, 2022, was indeed unexpected. However, after defendant Snyder and other officers subdued and restrained Burks in the C-pod sallyport, the sudden emergency was over and there was no longer any need to use force. Having fully resolved the incident, a group of approximately ten officers, including defendant Snyder and several co-defendants, willfully abandoned their legitimate law enforcement objective and instead escorted the handcuffed and compliant Burks from C-pod, down the hallway, around the corner, past empty interview rooms, and into an interview room that was a known "blind spot."

In the Stipulation of Fact accompanying his plea agreement, Snyder admitted that he knew that "blind spots" such as interview rooms and cells in A-pod were places officers would bring inmates to use unreasonable force against them as punishment. Snyder further admitted that, prior to the day Burks was killed, he himself had used unreasonable force against inmates inside interview rooms and other "blind spots" – and he admitted that, on March 1, 2022, he and other officers chose to bring Quantez Burks to the interview room for this same reason.  Inside the interview room and out of camera view, defendant Snyder and his codefendants punched, kicked, and knee-struck Burks in the head and about his body without justification, while other officers stood by and chose not to intervene to stop the unlawful assault. After assaulting Burks in the interview room, defendant Snyder and his co-defendants escorted him from there, ultimately carrying him to a cell in A-pod – another "blind spot" – where officers used additional unjustified force against the motionless, handcuffed man who posed no threat.

Under these circumstances, after Burks was restrained, the emergency ended and defendant Snyder and his co-defendants had the opportunity to reflect and make choices – and they chose to bring the subdued, handcuffed Burks into multiple "blind spots" where officers beat him as punishment, just as the defendant and other officers had beaten inmates on prior occasions.  While

the planning process was not a long one, the decision of defendant Snyder, his co-defendants, and other officers to assault Burks was still a premeditated one, thus warranting the application of §2A1.1. *See Sinclair*, 301 Fed.Appx. at 255 (finding that premeditation existed based upon the few minutes it took the defendant to retrieve his gun after an altercation at a nightclub).

Should the Court find that the conduct at issue here does not establish the requisite circumstances for the First Degree Murder guidelines provision, the United States alternatively submits that the conduct establishes the circumstances for Second Degree Murder as set forth by U.S.S.G. §2A1.2. Under 18 U.S.C. § 1111(a), second degree murder requires malice aforethought, which the Fourth Circuit has found "exists when the evidence demonstrates that the defendant acted with a heart that was without regard for the life and safety of others." *United States v. Slager*, 912 F.3d 224, 235-36 (4th Cir. 2019) (upholding the second-degree murder cross-reference in a § 242 case) (internal quotation and citation omitted). *See, e.g.,*, *United States v. Coll*, 762 F. App'x 56, 61 (2d Cir. 2019) (upholding application of §2A1.2 in § 242 case in which correctional officer repeatedly kicked victim in the head "[e]ven if [the defendant] did not intend to kill or seriously injure [the victim]" because such conduct "clearly manifested a reckless indifference to whether [the victim] lived or died"); *United States v. McDougle*, 82 F. App'x 153, 157–58 (6th Cir. 2003) (defining malice aforethought to include "conduct that is reckless and wanton, and a gross deviation from a reasonable standard of care, of such nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm") (internal quotation marks omitted).

Here, the evidence established proved that defendant Snyder and his co-defendants acted with malice aforethought during the assault of Burks because they acted without regard for his life or safety. *See Slager*, 912 F.3d at 235-36. As Snyder and others pleaded guilty to, and as co-

defendants testified at trial, Snyder, his co-defendants, and other officers escorted Burks to known "blind spots" for the purpose of inflicting unlawful punishment. Inside the interview room, Snyder and others willfully used unreasonable force against the handcuffed Burks by punching him in the head; slamming his head against the metal table; kicking him; knee-striking him; failing to intervene in other officers' punches and kicks; and aiding and abetting one another in punching, kicking, and striking him, resulting in his death. After the assault in the interview room, officers then brought Burks to the cell in A-pod, where they used additional unjustified force against a handcuffed man who had already been beaten and who had obvious physical injuries. *See Slager*, 912 F.3d at 235-36 (upholding application of §2A1.2 in a §242 case in which the defendant fired his weapon at an unarmed man who was fleeing); *see also United States v. Conatser*, 514 F.3d 508, 523 (6th Cir. 2008) (upholding application of second degree murder cross-reference in § 242 case in which defendant punched victim in the head twice and encouraged a codefendant to beat victim); *McDougle*, 82 F. App'x at 158 (upholding application of §2A1.2 in §242 case in which defendants restrained victim and repeatedly punched him in the abdomen). Because Snyder and his co-defendants assaulted Burks after premeditation and with malice aforethought, the voluntary manslaughter provision should not apply.

### A. Sentencing Factors

The United States respectfully submits that a sentence of up to 360 months is sufficient, but not greater than necessary, to promote the purposes of sentencing. 18 U.S.C. § 3553. Specifically, such a sentence here is necessary to account for the nature and seriousness of the offense and the history and characteristics of the defendant, as well as the need for adequate deterrence, to provide just punishment for the offense, and to avoid unwarranted sentence disparities among co-defendants. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(6).

**(1)    The nature and circumstances of the offense.**

This Court must consider "the nature and circumstances of the offense … [and] the need for the sentence imposed… to reflect the seriousness of the offense." 18 U.S.C. § 3553. Here, the crimes that defendant Snyder participated in were inherently serious: federal offenses resulting in the violent death of a thirty-seven-year-old man who was in the custody, care, and control of SRJ correctional officers. As the Supreme Court emphasized, public officials convicted of civil rights violations "have done more than engage in serious criminal conduct; they have done so under color of the law they have sworn to uphold." *Koon v. United States*, 518 U.S. 81, 110 (1996). "The seriousness of section 242 crimes simply cannot be understated, as they harm far more than individual victims; society as a whole is harmed when those entrusted to protect the public and enforce the laws turn to lawlessness themselves." *United States v. Boone*, 110 F. Supp. 3d 909, 917 (S.D. Iowa 2015), *citing United States v. McQueen*, 727 F.3d 1144, 1157 (11th Cir. 2013) (finding a violation of § 241 to be a "particularly serious offense," and stating that the "evils against which this civil rights statute is directed especially include correctional officers who flagrantly beat inmates (and young ones at that) placed by the law in their charge."); *see also United States v. Rodella*, No. CR 14-2783 JB, 2015 WL 711941, at *50 (D.N.M. Feb. 5, 2015) ("A law enforcement officer's violation of the law is not comparable to an ordinary criminal's violation. Civil rights crimes go to the core of our system and endanger the entire structure of our government and are a threat to the republic.").

**(2)    History and characteristics of the defendant**

This Court must consider the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Defendant Snyder's law enforcement experience, as well as his prior experience using unreasonable force against inmates, makes his conduct in connection with Burks's death all the

more blameworthy. Indeed, as the Fifth Circuit observed, "a defendant's status as a law enforcement officer is often times more akin to an aggravating as opposed to a mitigating sentencing factor." *United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000), *citing United States v. Winters*, 174 F.3d at 486 (Sentencing Commission "applied greater not lesser sentences" for crimes committed by law enforcement officers). *See also United States v. Rybacki*, 96 F.3d 754, (4th Cir. 1996) (finding that the district court abused its discretion when it departed from the guidelines simply because the defendant was a law enforcement officer).

### (3)    Need for the sentence imposed to afford adequate deterrence

This Court must consider "the need for the sentence imposed … to afford adequate deterrence to criminal conduct" (A)(2)(b). "General deterrence ... is one of the key purposes of sentencing." *United States v. Medearis*, 451 F.3d 918, 920-21 (8th Cir. 2006). The need for general deterrence "is especially compelling in the context of officials abusing their power." *United States v. Hooper*, 566 F. App'x 771, 773 (11th Cir. 2014). Inmates entrusted to the care, custody, and control of correctional officers are particularly vulnerable to such abuse. As one court observed, in a decision reversing lenient sentences for corrections officers: "[t]he need for the criminal law to deter seems especially compelling here. Prison inmates serve their sentences under the pervasive control of the corrections staff. . . Indeed, they may turn only to corrections officers for protection from beatings by other inmates, let alone from punitive beatings sustained at the hands of the officers themselves." *McQueen*, 727 F.3d at 1158.

The government submits that general deterrence considerations should apply to defendant Snyder's conviction for a civil rights violation, particularly considering the difficulty in investigating such offenses in the correctional setting as well as in holding offenders accountable. Abuses by correctional officers are difficult to uncover because officers often control inmates'

ability to communicate about such issues with people who are outside prison walls. In addition, some officers are too frequently willing to conceal and lie about such crimes, as defendant Snyder and others did in connection with Burks's death. *See McQueen*, 727 F.3d at 1158–59 ("The ability to unearth these crimes by law enforcement officers in a prison setting is particularly difficult, and, as we see it, the extraordinarily lenient sentences in this case sap the goal of general deterrence."). Indeed, on the day that Burks was beaten, only one officer refused to give a false statement to investigators – and after his shift that day, the witness never returned to SRJ, ultimately deciding against a career in law enforcement because of the events he witnessed there.

Correctional officers contemplating committing civil rights crimes, or covering up such crimes, may feel that they, like the officers who commit civil rights crimes, are unlikely to be caught. Indeed, uncovering and proving the circumstances surrounding Burks's death required extensive government resources and the willingness of cooperating witnesses to testify against fellow correctional officers, which are circumstances that may not be present in many cases.

A just sentence therefore should impact the decision-making of those "who may be tempted to violate the law and their oath of office to protect themselves or their fellow officers from possible state or federal criminal investigations." *United States v. Ronda*, 455 F.3d 1273, 1302 (11th Cir. 2006); *United States v. Bresnahan*, 400 F. Supp. 3d 793, 803 (D. Minn. 2019) (sentencing probation officer to 30 months for false statement to the FBI and explaining that "[w]hen a corrupt officer receives too lenient a sentence … it sends a signal to other officers and public servants that they too can harm others for the sole purpose of serving their own ends."). Adequate deterrence can only be achieved when correctional officers who are caught obstructing justice in these challenging and serious cases face significant penalties.

**(4)       Need to avoid unwarranted sentence disparities with co-defendants**

A sentence for defendant Snyder within the maximum of 360 months sentence established by the plea agreement would also avoid unwarranted sentence disparities with his co-defendants. Seven other defendants have been convicted for their roles in the death of Quantez Burks, three of who have been sentenced. On May 15, 2025, defendant Chad Lester, an SRJ lieutenant and shift supervisor who was convicted by a jury for his role in coordinating the cover-up of the assault by the officers working on his shift, was sentenced to 210 months. On May 8, 2025, Steven Nicholas Wimmer, who pleaded guilty to violating 18 U.S.C. § 241 (resulting in physical injury) in connection with Burks's death and admitted to using force against Burks, was sentenced to 108 months. On June 9, 2025, defendant Ashley Toney, who pleaded guilty to violating 18 U.S.C. § 242 (resulting in physical injury) based upon her failure to intervene in the unlawful assault, was sentenced to 78 months. Four other defendants await sentencing and face potential sentences ranging from 120 months of incarceration for the less experienced and less culpable defendants, up to a period of 360 months for the most culpable and more experienced defendants.

Defendant Snyder was one of the most culpable defendants in the assault that led to the death of Quantez Burks. He was twenty-seven years old at the time, held the rank of corporal, and had worked at SRJ for approximately five years. He admitted to using unreasonable force against Burks, both during the initial response to the officer assistance call and in the interview room, and he admitted to seeing co-defendants use unlawful force against Burks. Under these circumstances, a sentence up to 360 months would reflect defendant Snyder's role in the death of Burks, thereby avoiding unwarranted sentence disparities with his less culpable co-defendants.

**B.  Conclusion**

Defendant Snyder was a trained, experienced law enforcement officer who knowingly conspired with other officers to bring Quantez Burks to known "blind spots" for the purpose of inflicting unlawful punishment against him. There is nothing about defendant or his conduct that warrants a downward variance from the advisory guideline; instead, nearly every factor this Court should consider under 18 U.S.C. § 3553(a) points to the importance of the significant sentence. The United States therefore respectfully requests that defendant be sentenced to a period of incarceration as set forth in the plea agreement.

**C.  Time for Sentencing**

The United States does not intend to present any witnesses at the sentencing hearing. The government anticipates that the victim's family will address the Court. The United States anticipates the hearing should last approximately 1 hour.

Respectfully submitted,

LISA G. JOHNSTON
Acting United States Attorney

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

/s/Christine M. Siscaretti
CHRISTINE M. SISCARETTI
Deputy Chief of Operations
NY Bar No.4327748
U.S. Department of Justice
950 Pennsylvania Ave NW
Washington, DC 20530
Phone: (202) 598-9605
E-mail: christine.siscaretti@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing "SENTENCING MEMORANDUM OF THE UNITED STATES" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 3rd day of July, 2025 to:

> Richard Gunnoe
> Gunnoe Law Office
> 300 West Randolph Street
> Lewisburg, WV 24901
> gunnoelawoffice300@frontier.com
> O: (304) 645-2222

11